Sanford H. Weinzimer and Hermine Mosse Weinzimer v. Commissioner.
Weinzimer v. Commissioner
Docket No. 61440.
United States Tax Court
T.C. Memo 1958-137; 1958 Tax Ct. Memo LEXIS 88; 17 T.C.M. (CCH) 712; T.C.M. (RIA) 58137; July 16, 1958
*88 George H. Berman, Esq., for the petitioners. Victor H. Frank, Jr., Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: A deficiency in income tax for the year 1954 in the amount of $200.62 was determined by respondent. The entire amount is in controversy. A claim of overpayment in the amount of $324.56 is apparently occasioned by sums deducted as a withholding. Most of this amount is in dispute. The sole question is whether certain expenses of operating an automobile may be deducted as medical expenses by petitioner who is partially disabled by a spine injury. Findings of Fact Petitioners, Sanford H. Weinzimer and his wife Hermine Mosse Weinzimer, resided at 90 Rosedale Road, Valley Stream, Long Island during 1954 and filed their joint Federal individual income tax return for said year with the district director of internal revenue at Brooklyn,new York. Petitioner Sanford H. Weinzimer, hereinafter referred to by the use of the singular "petitioner," has a spinal cord injury and cannot walk unaided. The injury was the result of a wound received in 1945 while petitioner was in active service on the European battlefront. He spent *89 the next several years in Army and Veterans' hospitals and was discharged from Halloran Hospital in 1947. Since that time he has received therapy, periodical medical checkups and guidance, at Kingsbridge Veterans' Hospital. After several courses of study ending in June 1950, petitioner was unemployed until October 1951 when he obtained employment at Kingsbridge Veterans' Hospital. This employment, which has been continuous through the date of the trial herein, February 7, 1958, was obtained as a result of advice of his physician, who is also a veteran and a paraplegic, and has for some time been a medical adviser to the Veterans' Administration. Petitioner and his physician first met as fellow patients in 1945. By the end of 1946 the physician had ceased to be a patient at the hospital and was practicing medicine as an employee of the Veterans' Administration. Since that time he has acted as petitioner's physician through the Veterans' hospital. Prior to 1954 and while disabled, petitioner had an Oldsmobile car which he traded in for a Pontiac 2-door Sedan. This Pontiac had handicap controls which cost $67.50. The Pontiac car also had a radio. On said tax return petitioners *90 listed the amounts of their car expenses as $1,404.30. This amount was comprised of the following: Gasoline (less tax)
$ 390.00
Grease and oil
45.00
N.Y.U. Oldsmobile - Bronx, N. Y.
18.75
Noel Pontiac - New Hyde Park, N. Y.
26.80
Depreciation
562.50
Bridge tolls
150.00
American Automobile Assn.
15.00
Car wash
25.00
Insurance
171.25
$1,404.30
Of this $1,404.30 petitioners claimed five-sevenths or $1,003.05 as "expenses necessary to production of income." The five-sevenths was computed by taking the number of days in the week in which petitioner worked. Subsequent to the time of the filing of the said return and prior to the filing of the petition in the Tax Court, petitioners changed their claim from the five-sevenths as expenses necessary to production of income to a deduction of the entire amount as a medical expense. Petitioners traveled 21,000 miles in their car in 1954. Of that mileage approximately 15,000 or 16,000 miles were covered in computing between petitioner's residence and his place of work. Five thousand to 6,000 of the 21,000 miles driven in 1954 were covered in transportation of petitioner and his wife for social and recreational *91 trips. Both petitioners Sanford H. Weinzimer and his wife drove the car for such social usage. The car served among other things as petitioner's means of transporting himself to, among other places, his place of employment. In addition to using the car, petitioner engaged in exercises such as the use of weights and resistance to produce pressure, which exercises were intended to, and did, prevent bone and muscle atrophy. Petitioner had no mental defect or illness. After petitioner started to work he felt much better. Petitioner's doctor recommended employment for petitioner as part of the therapy for his physical condition. He also recommended the use of a car for improving petitioner's physical health. The use of the car both as a means of enabling petitioner to pursue the course of occupational therapy prescribed by his physician and for the physical activity which was occasioned by such use alleviated and mitigated ailments of petitioner directly caused by his principal illness consisting of the spinal cord injury. To the extent of 15/21 the car was used primarily for the purposes so described. That proportion of the car expenses shown was deductible as medical expense. *92 Opinion The foregoing ultimate finding which we regard as amply warranted by the evidence disposes of the primary controversy, which we consider essentially factual. It is based largely upon the testimony of petitioner's physician, who, except for petitioner himself, was the only witness. The view that the issue is basically one of fact arises because the parties are in virtual agreement that the legal principle to be applied is correctly stated in , as: "Thus also it is important to inquire as to the origin of the expense. Was it incurred at the direction or suggestion of a physician; did the treatment bear directly on the physical condition in question; did the treatment bear such a direct or proximate therapeutic relation to the bodily condition as to justify a reasonable belief the same would be efficacious; was the treatment so proximate in time to the onset or recurrence of the disease or condition as to make one the true occasion of the other, thus eliminating expense incurred for general, as contrasted with some specific, physical improvement?" With these requirements the record shows petitioner has complied. Although *93 the expenses were generally substantiated by petitioner's testimony, respondent takes exception to the item of depreciation. Basis was shown and at the trial it seem to be acceptable to both counsel [1] to resort to respondent's depreciation regulations (Bulletin "F" - Revised January 1942) for the anticipated useful life. The respondent in his brief argues for the first time that another factor, salvage value, should have been but was not placed in evidence. It seems unfair to the petitioner to have that point raised belatedly when to all appearances an agreement had been reached. Furthermore, the salvage value of the car in question, equipped as it was, could not amount to much and the Court will expect the parties to agree upon a proper deduction for depreciation and thus permit a computation of the tax. *94 Decision will be entered under Rule 50. Footnotes
1. "THE COURT: Have you any table which anticipates useful life on an automobile? "MR. FRANK [Resp.'s Counsel]: We don't have it here. "THE COURT: Is there such a thing in existence? "MR. FRANK: I believe there is a bulletin or regulation. "THE COURT: Could you agree that you would use that as a presumed useful life of this car? "MR. BERMAN [Pet.'s Counsel]: I would be willing to stipulate, whatever the bulletin or regulation provides, to accept that. * * *
"MR. FRANK: I think, as a practical matter, our office would abide by regulation 'F'. * * *
"MR. BERMAN: May I ask you on the record now, Mr. Frank, the depreciation be fixed on the basis the Government has selected as its basis, and that we go along on that. "MR. FRANK: I think that is agreeable, Your Honor."↩